**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **DEREK MYERS,** | : | |
| | : | |
| | : | **Case No. 2:19-cv-01458** |
| **Plaintiff,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Jolson** |
| **VILLAGE OF NEW HOLLAND,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before this Court on Defendants' Motion for Partial Summary Judgment. (ECF No. 54). For the following reasons, Defendants' Motion is **GRANTED in part and DENIED in part**.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff, Derek Myers, a freelance news reporter, operates several social media platforms (ECF No. 28 at ¶ 11). In 2017, while writing stories for the Central Gazette and Fayette Advocate, Myers became acquainted with several public officials in the Village of New Holland (the "Village"). (ECF No. 60 at 7). The Village is a political subdivision organized and existing under the laws of the State of Ohio. (ECF No. 28 at ¶ 4). While the Village previously received its law-enforcement services through a contract with the Pickaway County Sheriff's Office, in 2016, it reactivated its police department. (ECF No. 54 at 2). That department, the Village of New Holland Police Department ("NHPD"), was initially led by Defendant William Jason Lawless. (*Id.*). Lawless served as Police Chief from February 2017 to July 2018. (*Id.*). On August 2018, Defendant Christopher Mosley replaced Lawless as Police Chief. (*Id.*). At all times relevant to

Plaintiff's Complaint, Defendant Clair "Butch" Betzko, was mayor of the Village. (ECF No. 28 at ¶ 5). Betzko held this position from 2014 to 2019. (ECF No. 54 at 2).

### 1. Pre-August 2017

In February 2017, Plaintiff began frequenting the Village office to gather information for stories he was writing. (ECF No. 54 at 3). Specifically, Plaintiff planned to publish a story alleging Betzko had impermissibly signed timecards for his son who also worked for the Village. (ECF No. 28 at ¶ 14). Plaintiff alleges that around this time, as a result of this story and his investigation, Defendants and many New Holland residents began to dislike him. (*Id*., ¶ 13). Defendants maintain that the reason for this was that Plaintiff had become disruptive, and Lawless had received complaints about his behavior from Village residents. (*Id*. at 3). Lawless testified he had received complaints about reckless driving, as well as allegations of harassment and stalking. (*Id*. at 3–4). As detailed further below, the latter of these complaints were from Plaintiff's former partner, Henry Onions.[1] (*Id*.). Lawless represents he continued receiving complaint from Mr. Onions throughout the summer of 2017. (*Id*.). Similar complaints were made to the Washington Court House Police Department ("WCHPD") and the Fayette County Sheriff's Office ("FCSO"). (*Id*.). No charges were ever filed against Plaintiff as a result of these complaints. (ECF No. 60 at 7–8).

### 2. August 2017 to September 2017

On August 14, 2017, Plaintiff attended a Village Council meeting. (ECF No. 54 at 5). Defendants allege Plaintiff became disruptive at that meeting and was required to leave. (*Id*.). Based on this incident, New Holland City Council Member Vivian Wood filed a complaint against Plaintiff, alleging his conduct made her fear for her life, particularly because he represented he had obtained a concealed carry permit. (*Id*.). As a result, Plaintiff was charged with Menacing, ORC §

---

[1] Henry Onions is also referred to as Henry Taylor in multiple pleadings and at his deposition.

2903.22, and Disturbing a Lawful Meeting, ORC § 2917.12. (ECF No. 28 at ¶ 51). The menacing charge was dismissed, and the disturbing a lawful meeting charge was reduced to a lesser offense, a minor misdemeanor of disorderly conduct, to which Plaintiff pled guilty. (*Id*., ¶¶ 54, 55).

### 3. *October 2017*

On October 5, 2017, Plaintiff reached out to Betzko for comments on various stories Plaintiff was writing. (*Id*.). While Betzko did not respond to this request, the next day Plaintiff received a text message from Lawless, requesting he immediately come to the Village office. (*Id*., ¶ 17). Plaintiff ultimately never spoke to Lawless or Betzko, but rather spoke with Village of New Holland Clerk, Shannon Clegg, over the phone. (*Id*., ¶ 23). Plaintiff alleges that during this conversation, Ms. Clegg informed him that Betzko and Lawless were planning to threaten Plaintiff with false charges if he did not drop his story. (*Id*., ¶¶ 23–26). A recording of this call reveals that this did not occur. Rather, their conversation was mundane and related to Plaintiff's investigation into corruption in the Auditor's office.[2] (ECF No. 70 at 3–4).

On October 7, 2017, while out on patrol, Defendant Lawless observed a vehicle fail properly to signal at a stop light. (ECF No. 54 at 5). Upon conducting a traffic stop, Lawless determined that Mr. Onions was driving the vehicle. (*Id*.). During this stop, Mr. Onions allegedly made complaints to Lawless regarding Plaintiff's conduct, like those he had made previously to NHPD and WCHPD. (*Id*.). Shortly after, while Lawless was stopped in a residential neighborhood, Plaintiff pulled up next to him and asked what occurred at the traffic stop with Mr. Onions. (ECF No. 28 at ¶ 34). After an allegedly contentious interaction, Plaintiff drove away. (*Id*., ¶ 35). Lawless represents Plaintiff drove away in excess of the posted speed limit and then failed to use his turn

---

[2] This Court finds Plaintiff's counsel's representation of this phone call seriously troubling. (*See* ECF No. 60 at 10). As Defendants highlight in their reply brief, almost all these representations are false and do not accurately capture the nature of this phone call. (*See* ECF No. 70 at 3–4).

signal. (ECF No. 54 at 6). As a result, Lawless followed Plaintiff and initiated a traffic stop. (*Id*.). There are conflicting accounts of the words exchanged between Plaintiff and Lawless during the traffic stop, but Lawless cited Plaintiff for speeding and failing to use his turn signal. (ECF No. 28 at ¶ 39). Each of these citations was later dismissed. (ECF No. 60 at 12).

On October 8, 2021, Mr. Onions went to the FCSO and filed a complaint alleging Plaintiff was stalking and harassing him. (ECF No. 54 at 7). While FCSO did not take any action on this complaint (*see* ECF No. 60 at 13), Lawless did. Based on Mr. Onion's statements to Lawless earlier that day, and the other complaints Mr. Onions had made over the past year, Lawless filed a Menacing By Stalking complaint against Plaintiff. (*Id*.). That complaint was later dismissed. (ECF No. 28 at ¶ 53).

On October 13, 2017, Ms. Clegg called Lawless and told him she was going to make sure Plaintiff lost his phone and laptop. (ECF No. 28 at ¶ 56). Concerned about Ms. Clegg's statement, Lawless filed an incident report. (*Id*., ¶ 57). Lawless did not inform Plaintiff of what Ms. Clegg had said. (*Id*., ¶ 58). Sometime during October 2017, Plaintiff represents the hard drive on his laptop and one of his old phones went missing. (*Id*., ¶ 59). Defendants represent that months later an individual named Celina Camp reached out to NHPD Officer Brad Mick and stated she had found a flash drive belonging to Plaintiff at her house. (ECF No. 70 at 6). Officer Mick retrieved the flash drive from Ms. Camp and placed it in evidence. (*Id*.). Plaintiff was not informed of this discovery. (ECF No. 28 at ¶ 62). Defendants represent they never possessed Plaintiff's phone or hard drive. (ECF No. 70 at 6).

### 4. November 2017

On November 29, 2017, Plaintiff was required to attend Mayor's Court at Village Hall to respond to the citations issued on October 7, 2017. (ECF No. 28 at ¶ 63). When he arrived, Plaintiff

got in an altercation with New Holland resident Brenda Landham, after which Plaintiff was asked to leave Village Hall by Magistrate Howard Mellon. (*Id.*, ¶¶ 64–66). Before he could leave, however, Plaintiff suffered a panic attack because of his interaction with Ms. Landham. (*Id.*, ¶ 65). As a result, Plaintiff called the Pickaway County Sheriff's office who responded with two deputies and an ambulance. (*Id.*, ¶ 68). When Plaintiff finally left Village hall, Defendant Lawless allegedly observed him violate another traffic ordinance and cited him for "Reckless Operation" and "Peeling Out." (*Id.*, ¶ 69). These charges were later dismissed following an appeal. (*Id.*, ¶¶ 70 – 71). Furthermore, as Plaintiff left Village Hall and was not present for his court hearing, a warrant was issued by Magistrate Mellon for Plaintiff's arrest. (ECF No. 54 at 7–8).

On November 30, 2017, Plaintiff appeared at the Washington Court House Municipal Court to adjudicate several unrelated traffic citations. (ECF No. 28 at ¶ 73). Lawless was present in the courthouse, with the intention of executing the arrest warrant that had been issued by Magistrate Howard Mellon. (ECF No. 54 at 8). Upon seeing Lawless, Plaintiff suffered a panic attack and was transported to the Fayette County Hospital. (ECF No. 28 at ¶ 74). Lawless called Officer Mick to accompany him, and then traveled to the hospital. (*Id.*, ¶ 75).

After Plaintiff was discharged, Officer Mick and Lawless presented Plaintiff with the warrant for his arrest and proceeded to arrest him. (*Id.*, ¶ 76). Officer Mick alleges Plaintiff failed to comply with their instructions and was generally causing a disturbance in the hospital. (ECF No. 54 at 8). As a result, Plaintiff was charged with Inducing Panic, Disorderly Conduct and Resisting Arrest. (ECF No. 28 at ¶ 76). Plaintiff was transported to the Pickaway County Jail and held on bond. (*Id.*). Plaintiff bonded out approximately four hours later. (*Id.*). Each of these charges was dismissed on July 31, 2018. (*Id.*, ¶ 81).

### 5. February 2018 to October 2018

On February 23, 2018, Ms. Landham left Plaintiff numerous voice messages, calling him a homophobic slur. (*Id*., ¶ 83). Thereafter, Plaintiff alleges he received several phone calls from the phone number 740-495-5097, which is the phone number of the Office of the Village of New Holland. (*Id*., ¶ 84). After she reached out to Officer Mick to provide her statement of events, Ms. Landham allegedly verified she had called Plaintiff from the Village Office and that Lawless had been present during this call. (*Id*., ¶¶ 87–89). Thereafter, Officer Mick filed misdemeanor charges of Telecommunications Harassment and Dereliction of Duty against Lawless and filed a charge of Obstructing Official Business against Betzko for trying to stop Officer Mick from interviewing Ms. Landham. (*Id*., ¶ 89). Evidence later revealed that Ms. Landham never called from the village office and neither Lawless nor Betzko was present. (ECF No. 70 at 7–8).

In early summer 2018, the Village hosted a festival on the grounds of the Village of New Holland Police Division. (ECF No. 28 at ¶ 91). Plaintiff alleges this festival was sponsored by Defendants for the sole purpose of disparaging, defaming, and harassing him. (*Id*.). This festival was allegedly advertised on social media as the "Derek Myers Sucks Festival." (*Id*.). Plaintiff alleges Lawless and Betzko aided Ms. Landham in making the event "anti-Derek." (ECF No. 60 at 20). Plaintiff maintains these three went so far as to intimidate New Holland resident Lisa Ingles, an organizer of the event, into publishing false information about Plaintiff on the event's social media page. (*Id*. at 21). The festival was held, largely without incident, save for Ms. Landham walking around with a posterboard containing disparaging information about Plaintiff. (*Id*.). That poster was not placed on any Village building, nor was it held by any Village employee. (*Id*.).

On October 30, 2018, while on patrol, NHPD Officer Cody Powell was approached by an unidentified citizen who informed him that they had seen some people with flashlights hanging

around some storage units nearby. (ECF No. 54 at 9). Officer Powell went to investigate and came upon Karen Francis, Brad Mick,[3] and Plaintiff. (*Id*.). The three were camping on Ms. Francis's private property. (ECF No. 28 at ¶ 95). Officer Powell alleges the three were yelling and cursing at him, and Plaintiff did not provide identification. (ECF No. 54 at 10). As the interaction intensified, Plaintiff allegedly shone his flashlight in Officer Powell's face, and Officer Powell attempted to grab the flashlight. (*Id*.). After Plaintiff allegedly eluded Officer Powell's handcuffs for some time, Officer Powell was able to handcuff Plaintiff. (*Id*.). Sometime prior to his arrest, Plaintiff had called 9-1-1 and Officers from FCSO and PCSO responded, along with firefighters and paramedics. (*Id*.). Officer Powell then called Defendant Mosley to the scene of the arrest. (ECF No. 28 at ¶ 97). Plaintiff was subsequently charged with Obstruction, Inducing Panic, and Resisting Arrest, and spent thirty-five (35) days in jail. (*Id*., ¶¶ 100–101). All three charges were dismissed. (*Id*., ¶ 102).

## B. Procedural Background

On April 16, 2019, Plaintiff initiated the instant action against the Village, former Mayor Betzko, former New Holland Police Chief Lawless, and New Holland Police Chief Mosley. (*See* ECF Nos. 1, 28). Plaintiff alleges Defendants retaliated against him for his news reporting by falsely arresting him, threatening him, and harassing him. (*See generally id*.).

After the parties completed discovery, Defendants moved for summary judgment on ten (10) of the eleven (11) claims asserted in Plaintiff's Amended Complaint.[4] (*See generally* ECF No. 54). Plaintiff filed his Memorandum in Opposition to Defendants' Motion (ECF No. 60), and Defendants timely replied (ECF No. 70), making their Motion ripe for review.

---

[3] At this time Mr. Mick was no longer employed by NHPD.
[4] Defendants do not seek summary judgement on Plaintiff's state law claim for defamation.

## II. STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-moving party's favor. *U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the Court with law and argument in support of its motion, as well as to identify the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the non-moving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the non-movant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving party's] position [is] insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

### III. LAW & ANALYSIS

Defendants argue they are entitled to summary judgment on all but one of the claims asserted in Plaintiff's Amended Complaint, as they are entitled either to qualified immunity or to statutory immunity. (*See generally* ECF No. 54). Alternatively, they assert that each of these claims fails as a matter of law. (*Id*.). Before delving into Defendants' Motion, this Court addresses qualified and statutory immunity.

### A. Immunity

#### 1. *Qualified Immunity*

Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotations omitted)). Qualified immunity is a two-step analysis: this Court must determine whether the officers violated Plaintiff's constitutional rights, and if so, whether those rights were clearly established at the time. *Smith v. Stoneburner*, 716 F.3d 926, 929 (6th Cir. 2013) (citing *Pearson*, 555 U.S. at 236). In this context,

"clearly established" means "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted)). "Although . . . qualified immunity comprises a legal issue, summary judgment is inappropriate when conflicting evidence creates subordinate predicate factual questions which must be resolved by a fact finder at trial." *Hamilton v. Myers*, 281 F.3d 520, 531 (6th Cir. 2002).

As detailed below, the claims in Plaintiff's Complaint generally fall into two categories. First, there are those claims that this Court finds fail as a matter of law, regardless of qualified immunity. Second, are those where there exists a genuine issue of material fact as to the existence of probable cause, for which, a grant of qualified immunity would be improper. *See Shevlin v. Cheatham*, 211 F. Supp. 2d 963, 972–73 (S.D. Ohio 2002). This Court delineates each below.

2. *Statutory Immunity* [5]

Under Ohio law, an employee of a political subdivision is generally protected by statutory immunity. *Mayes v. Columbus*, 105 Ohio App. 3d 728, 664 N.E.2d 1340, 1348 (1995). Accordingly, an employee of a political subdivision cannot be held personally liable for mere negligence, but only for actions that fall into one of the enumerated exceptions. *Fabrey v. McDonald Village Police Dept.*, 639 N.E.2d 31, 36 (1994). One such exception is where "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." O.R.C. § 2744.03(A)(6)(b).

To act with a "malicious purpose" is to act with a "willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is

---

[5] This Court separately discusses statutory immunity as it relates to the Village. (*See infra* at Part III(D)).

unlawful or unjustified." *Cook v. City of Cincinnati*, 658 N.E.2d 814, 821 (1995). "'Bad faith' involves a dishonest purpose, conscious wrongdoing, . . . or an actual intent to mislead or deceive another." *Id*. The failure to exercise any care whatsoever constitutes "wanton" misconduct. *Fabrey*, 639 N.E.2d at 35. "Recklessness" refers to an act done while knowing or having reason to know of facts that would lead a reasonable person to believe that the conduct creates an unreasonable risk of harm and that this risk is substantially greater than that necessary to make the conduct negligent. *Thompson v. McNeill*, 53 Ohio St.3d 102, 559 N.E.2d 705, 708 (1990) (citing Rest.2d of Torts § 500 (1965)).

Plaintiff's state law claims also fall into two categories. First, there are those claims that this Court finds fail as a matter of law, regardless of statutory immunity. Second, are those where there exists a genuine issue of material fact as to the existence of malicious purpose, bad faith, wanton or reckless conduct, for which, a grant of statutory immunity would be improper. *Fabrey*, 639 N.E.2d at 35. Along with the aforementioned federal law claims, this Court demarcates below Plaintiff's state law claims for which a grant of statutory immunity would be improper.

### B.  Fourth Amendment Unlawful Arrest

"The Fourth Amendment, which is made applicable to the states by its incorporation into the Fourteenth Amendment, mandates that 'a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime.'" *Radvansky*, 395 F.3d at 302 (quoting *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004)). A police officer has probable cause to make an arrest when "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing [] the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S.

89, 91 (1964). A reviewing court "must assess the existence of probable cause 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Radvansky*, 395 F.3d at 302 (quoting *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)). Determining whether probable cause exists generally "'presents a jury question, unless there is only one reasonable determination possible.'" *Gardenhire*, 205 F.3d at 315 (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

### 1. *Resisting Arrest, Inducing Panic & Disorderly Conduct – Nov. 30, 2017*

Defendants argue that Plaintiff's arrest on November 30, 2017, and the related charges, were all supported by probable cause. (ECF No. 54 at 17). As a prefatory point, Defendants highlight that Lawless was not the arresting officer on November 30, 2017; it was Officer Mick. (*Id.*). Moreover, Defendants argue that Betzko and Mosley were not involved in this arrest, particularly as Mosley was not yet employed by the Village. (*Id.* at 17, n. 5). Defendants argue this arrest was supported by probable cause as it was pursuant to a valid warrant issued by Magistrate Mellon. (*Id.*). Defendants maintain Plaintiff's actions at the hospital—screaming and disrupting hospital staff—created further probable cause for the arrest and charges of Resisting Arrest, Inducing Panic and Disorderly Conduct. (*Id.* at 18–19).

Plaintiff argues there are issues with the credibility of Defendants' representations regarding his arrest, which necessitate probable cause be determined by a jury. (ECF No. 60 at 28 (citing *Swiecicki v. Delgado*, 463 F.3d 489, 498 (6th Cir. 2006)). Plaintiff alleges that Defendants Lawless and Betzko directed his arrest and prosecution as retaliation for Plaintiff's news stories. (*Id.* at 29). Given this, and as supported by the statements made by Ms. Clegg, Plaintiff argues Betzko and Lawless are liable for his false arrest. (*Id.*). Finally, Plaintiff highlights Officer Mick's statement, wherein Officer Mick claims Lawless pressured him to charge Plaintiff. (*Id.* at 18).

To succeed on this 28 U.S.C. § 1983 claim, Plaintiff must show "some personal involvement" by each of the named Defendants. *See Bennett v. Schroeder*, 99 F. App'x 707, 712–13 (6th Cir. 2004). This Court finds Plaintiff has failed to provide any evidence, beyond mere speculation, that either Defendant Mosley or Defendant Betzko had sufficient personal involvement in this arrest.

First, Mosley was not employed by the Village until August 2018, and as a result, could not have been involved in any police matter. (ECF No. 54-7 at 23–24). Second, without any credible evidence, Plaintiff alleges Betzko directed Officer Mick and Lawless to arrest him. (ECF No. 60 at 25, 28–29). Simply because Betzko may have "not cared for" Plaintiff or found his reporting to be "full of lies," does not mean he directed NHPO to arrest him. The only other piece of evidence supporting this claim is the phone call from Ms. Clegg. Upon listening to a recording of this call, this Court finds nothing therein which corroborates Plaintiff's story. (*See* ECF No. 67). In fact, the recording is devoid of any warnings from Ms. Clegg that either Betzko or Lawless had any intention of illegally or improperly retaliating against Plaintiff. (*Id*.). Accordingly, Plaintiff has not shown that Betzko "assisted, authorized, approved, or knowingly acquiesced in the unconstitutional conduct[.]"

As to Lawless, Defendants represent he was not the arresting officer on November 30, 2017; it was Officer Mick. (ECF No. 54 at 17). A review of the record reveals that Lawless was not only present during Plaintiff's arrest, but also planned to arrest Plaintiff himself and only called Officer Mick as backup. (ECF No. 44-1 at 219). There can be no argument Lawless did not have "some personal involvement" in Plaintiff arrest. Lawless asserts this arrest was supported by probable case based upon the warrant issued by Magistrate Mellon. (*Id*.; ECF No. 61-6 (warrant for Plaintiff's arrest issued by Magistrate Mellon, citing Plaintiff's failure to appear and failure to

follow a court order)). Plaintiff argues this warrant was not supported by probable cause, as he did appear at Mayor's Court that day but was told to leave by Magistrate Mellon. (ECF No. 60 at 18). Plaintiff offers the testimony of Officer Mick, who stated he did not feel the warrant "was valid[,]" as he later learned Plaintiff had appeared in Mayor's Court. (ECF No. 45-1 at 133). Magistrate Mellon ordered Plaintiff and Ms. Landham to leave Mayor's Court after the two got into an altercation at Village Hall. (ECF No. 44-1 at 212).

An arrest "pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or imprisonment." *Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014). To satisfy the Fourth Amendment's Warrant Clause, "a neutral and detached magistrate must independently determine that probable cause exists[.]" *Graves v. Mahoning Cty.*, 821 F.3d 772, 778 (6th Cir. 2016). As "[t]he Fourth Amendment prohibits unreasonable searches and seizures not warrantless ones[,]" an officer's decision to arrest is reasonable so long as he has probable cause—even if the arrest warrant is invalid. *See id.*

Based on the warrant, both Lawless and Officer Mick had sufficient reasonable belief that Plaintiff failed to appear at Mayor's Court on November 29, 2017. It was not until later, once they viewed the video, that both men learned Plaintiff had appeared and was then asked to leave.[6] (ECF No. 44-1 at 215; ECF No. 45-1 at 133). Once Lawless was presented with the warrant signed and issued by Magistrate Mellon, he and Officer Mick had sufficient facts to warrant a reasonable belief that Plaintiff failed to appear, and they were not obligated to investigate further. Even were this warrant faulty, without knowing otherwise, Lawless and Officer Mick were entitled to rely on it for probable cause to arrest Plaintiff. *Beckham v. City of Euclid*, 689 F. App'x 409, 415–417 (6th

---

[6] While Plaintiff alleges Defendant Lawless was at Mayor Court, his testimony reveals he was merely in the building and did not arrive at Mayor's Court until Plaintiff had left. (ECF No. 44-1 at 212–213).

14

Cir. 2017) (holding that officers were entitled to rely on a bench warrant which represented plaintiff had failed to report, even where it was later revealed plaintiff had reported).

Moreover, this Court is not convinced the warrant was faulty. Ohio law allows punishment for contempt where a person is guilty of "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer[.]" Ohio Rev. Code Ann. § 2705.02 (West). While Plaintiff showed up to Mayor's Court, it is reasonable for Magistrate Judge Mellon to find that, following the disruptive altercation with Ms. Landham, Plaintiff had not substantially appeared, in violation of Magistrate Mellon's order.

Either way, this Court's previous conclusion is determinative and there was sufficient probable cause for Plaintiff's arrest on November 30, 2017. As a result, all Defendants are **GRANTED** summary judgment on this claim.

### 2. *Obstruction, Inducing Panic & Resisting Arrest – Oct. 30, 2018*

Defendants maintain Plaintiff's arrest on October 30, 2018 was supported by probable cause. (ECF No. 54 at 20). Defendants argue Plaintiff has not alleged any facts showing either Defendant Betzko or Lawless were involved in this arrest, particularly as Lawless was no longer employed by the Village at the time of the arrest. (*Id*.). Defendant Mosley asserts that Officer Powell was the arresting officer, not him. (*Id*. at 21). Defendants maintain Plaintiff's conduct that evening—screaming, being combative and actively evading Officer Powell—created sufficient probable cause for Plaintiff's arrest. (*Id*.).

Plaintiff maintains there was a lack of probable cause for his arrest. (ECF No. 60 at 28–30). He claims this arrest was merely retaliation for the stories he had been writing about the Village and Betzko. (*Id*.). Plaintiff represents Betzko was at the storage units next to Karen Francis's property during the arrest. (*Id*. at 22). Plaintiff alleges Mosley told him that Mosely

would charge him with a lesser offense if Plaintiff stopped writing stories about the village. (*Id*. at 23). Each of these factors, says Plaintiff, shows that Betzko and Mosley were involved in the arrest, and that there was no probable cause. (*Id*.).

As with Plaintiff's November 20, 2017 arrest, this Court finds there is insufficient evidence showing either Defendant Lawless or Defendant Betzko was involved. Defendant Lawless resigned from his position in July 2018, and therefore could not have been involved in, Plaintiff's arrest. (ECF No. 54 at 2). And, while Plaintiff alleges Betzko was present, his sworn testimony reveals that Betzko was out-of-state until early November 2018. (ECF No. 42-1 at 69). Plaintiff has not offered any evidence to refute this representation.

Plaintiff has not offered any evidence showing Mosley took part in this arrest. Mosley's testimony, as well as the testimony of arresting officer, Cody Powell, illustrate that Mosley arrived after Plaintiff was detained. (ECF No. 46-1 at 73 (Chief Mosley representing he arrived on scene after Plaintiff was arrested); ECF No. 47-1 at (Officer Powell representing he called Chief Mosely after Plaintiff was detained and other law enforcement and EMS had arrived)).

In a § 1983 action, a plaintiff may not rely on "*respondeat superior*" theories to find a party liable based on the actions of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). Rather, the § 1983 plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 676. "'Proximity to a wrongdoer does not authorize punishment.'" *Pineda v. Hamilton Cty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (quoting *Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992)).

The record evidence reveals that Mosely took no part in Plaintiff's arrest. Moreover, there is no evidence Mosely directed Officer Powell to arrest Plaintiff. Rather, Plaintiff cursorily claims Mosely can be held liable for this allegedly unconstitutional arrest, because he was aware PCSO

16

had forbidden NHPD officers from entering Ms. Francis's property earlier that day and did not so inform Officer Powell. (ECF No. 60 at 22). This omission, however, does not show that Mosely "at least implicitly authorized, approved, or knowingly acquiesced in unconstitutional conduct." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Had Plaintiff wished to allege that this arrest was unconstitutional, he would have needed to include Officer Powell in his Complaint. He did not, and the time for doing so has passed. Defendant Mosely cannot be liable for an arrest in which he played no part. As a result, Defendants are **GRANTED** summary judgment on this claim.

### C. First Amendment Retaliatory Arrest & Prosecution

Defendants maintain they are entitled to summary judgment on Plaintiff's First Amendment retaliation claims as each charge filed against Plaintiff, and both of his arrests, were supported by probable cause. (ECF No. 54 at 22). Even without probable cause, Defendants argue summary judgment is still appropriate as Plaintiff has not sufficiently shown the alleged retaliation was a substantial or motivating factor behind the arrest or prosecution. (*Id*. at 23). Defendants highlight Plaintiff's misrepresentations of the recorded phone call with Ms. Clegg, arguing it does not establish any retaliatory motive by Defendants. (ECF No. 70 at 6, 13).

Plaintiff argues no prosecutions or arrests were supported by probable cause, and that retaliation was a substantial or motivating factor in each. (ECF No. 60 at 28–30). Plaintiff relies on the recorded phone conversation with Ms. Clegg, wherein she allegedly confirmed that Betzko and Lawless planned to fabricate charges against Plaintiff in retaliation for the stories he had been writing. (*Id*. at 29). Plaintiff further highlights the fact that no charges were initiated against him until the day after he published the first story regarding Betzko's son. (*Id*. at 29).

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech. *Hartman v. Moore*, 126 S.

Ct. 1695, 1701 (2006). Such retaliatory actions can include arrest and criminal prosecution. *See id*. (recognizing a First Amendment action for retaliatory prosecution); *see also Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 (2019) (recognizing a First Amendment action for retaliatory arrest). In either case, a plaintiff must also prove the decision to press charges or arrest was objectively unreasonable because it was not supported by probable cause. *Nieves*, 139 S. Ct. at 1723. Recently, the Supreme Court added an additional hurdle for a plaintiff alleging either retaliatory prosecution or arrest, after he has shown an absence of probable cause. As recognized in *Hartman* and *Nieves*, that plaintiff must also show "the retaliation was a substantial or motivating factor behind the [prosecution or arrest], and, if that showing is made, the defendant can prevail only by showing [] the [prosecution or arrest] would have been initiated without respect to retaliation." *Id*. at 1725; *Hartman*, 126 S. Ct. at 1695.

Plaintiff's retaliation claims cannot survive summary judgment. Plaintiff has not shown that the alleged retaliation was a substantial or motivating factor behind any prosecution or arrest. The recorded phone conversation with Ms. Clegg does not substantiate any of Plaintiff's claims. Rather, during the call Plaintiff asked Ms. Clegg what Lawless thought of the article and Ms. Clegg's responded that Lawless "could not care less." (ECF No. 67, *Clegg Recording* at 11:15). During her deposition testimony, Ms. Clegg confirmed that Lawless and Betzko were indifferent to Plaintiff's stories. (*See* ECF No. 64-1 at 64). Without any further evidence of Defendants' subjective motivations, Plaintiff's First Amendment retaliatory arrest and prosecution claims cannot proceed. *See Kinkus v. Vill. of Yorkville, Ohio*, 289 F. App'x 86, 94–95 (6th Cir. 2008) (holding defendant officers were entitled to summary judgment on plaintiff's First Amendment retaliatory prosecution claim, where there was no evidence of record of retaliatory animus); *see also Nieves*, 139 S. Ct. at 1728 (holding plaintiff's First Amendment retaliatory arrest claim could

18

not proceed where the only evidence retaliatory animus was affidavit where an officer stated "bet you wish you would have talked to me now"). Accordingly, Defendants are **GRANTED** summary judgment on this claim.

### D.  *Monell* & the Village's Liability under State Law

Defendants allege Plaintiff failed to produce evidence to support a § 1983 *Monell* claim against the Village. (ECF No. 54 at 24). Defendants maintain that Plaintiff's *Monell* claim cannot proceed if there was no underlying constitutional violation, and there was none here. (*Id*.). Even if there were, Defendants argue that Plaintiff has not identified or established any Village policy or custom that would serve as a moving force behind any alleged constitutional violation. (*Id*.). Defendants contend there is no evidence that Betzko engaged in any policy-making decisions that resulted in a constitutional violation sustained by Plaintiff. (ECF No. 70 at 18). Defendants also assert that the Village is statutorily immune from Plaintiff's state law claims, as it is a political subdivision engaged in a governmental function at the time of the alleged incident. (ECF No. 54 at 26).

Plaintiff argues he has established sufficient facts that the Village, through Betzko, Lawless, and Mosley, violated his constitutional rights. (ECF No. 60 at 31–33). Relying on *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), Plaintiff asserts he may point to a particular decision or act made by someone who is asserted to be a final policymaker, to support his *Monell* claim. (*Id*. at 32). Plaintiff alleges Betzko, as the Chief Executive of NHPD, threatened maliciously to prosecute and harass him on October 6, 2017, which constitutes a "particular decision" by a final policymaker. (*Id*.). In support, Plaintiff relies on the phone conversation recording with Ms. Clegg. (*Id*. at 33). Plaintiff does not challenge the Village's statutory immunity under the Ohio Revised Code.

19

Without holding whether there were any underlying constitutional violations here, this Court finds that there is insufficient evidence to support a *Monell* claim against the Village. To hold a municipality liable under § 1983, a plaintiff must show that the municipality was, "through its deliberate conduct . . . the moving force behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (internal quotation omitted). A plaintiff must demonstrate that the municipality had a "policy or custom" that caused the violation of her rights. *Monell*, 436 U.S. at 694. The Sixth Circuit outlined four methods to establish a municipality had such a policy or custom. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (the four methods are: (1) an illegal official policy or legislative enactment; (2) an official with final decision-making authority ratifying illegal actions; (3) a policy of inadequate training or supervision; and (4) a custom of tolerance or acquiescence of federal rights violations)

Then, in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1985), the Supreme Court held that a municipality may also be held liable under § 1983 for a single action by the municipality's policymakers. *Id*. at 479-80. The municipality is liable "for an official's unconstitutional action only when the official is the one who has the final authority to establish municipal policy with respect to the action ordered." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (quoting *Pembaur*, 475 U.S. at 481) (internal quotation marks omitted). Plaintiff alleges Betzko is an official with final policy making authority.

Setting aside the question of whether Betzko has final authority, the only evidence Plaintiff has supporting Betzko's involvement is the phone conversation recording with Ms. Clegg. The Court has already found that this recording says nothing about Betzko having any vendetta against Plaintiff, let alone instructing Lawless or anyone else to arrest or prosecute Plaintiff. The record is otherwise devoid of any evidence that Betzko established any custom, formal or otherwise, to

harass and prosecute Plaintiff. As liability under *Pembaur* only attaches where "the policymaker's decision *directly caused* the violation of constitutional rights," and Plaintiff has shown no such direct causation, his *Monell* claim fails. *See Crabbs v. Scott*, 800 Fed. Appx. 332 (6th Cir.2020) (citing *Pembaur*, 475 U.S. at 484). Accordingly, Defendants are **GRANTED** summary judgment on this claim.

Moreover, as Plaintiff has not addressed his state law claims against the Village, or Defendants' arguments on statutory immunity, this Court deems them abandoned. *See Brown v. VHS of Michigan, Inc.*, 545 Fed. Appx. 368 (6th Cir.2013) ("This Court's jurisprudence is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). As these were the only claims asserted against it, the Village of New Holland is **DISMISSED** from this action.

### E.  Federal & State Law Malicious Prosecution

Defendants largely hang their hat on their previous arguments regarding probable cause. (*See* ECF No. 54 at 23). They argue that because each of the charges filed against Plaintiff were supported by probable cause and both federal and state law require a lack of probable cause for an actionable malicious prosecution claim, each of Plaintiff's claims fails. (*Id*. at 23, 30–31). Regarding his state law malicious prosecution claim, Defendants further argue Plaintiff has not offered evidence showing Defendants acted with malice. (*Id*. at 31). Defendants argue that probable cause is not undermined by any alleged subjective intent. (ECF No. 70 at 13).

Plaintiff asserts that, given the credibility determinations at play, the question of probable cause must be left to a jury and his malicious prosecutions claims must similarly proceed. (ECF No. 60 at 28). Regarding his state law claim, Plaintiff maintains that he has successfully produced sufficient evidence to create a genuine issue of material fact as to the existence of malice. (*Id*. at

36). Finally, Plaintiff argues that each of these charges was resolved in his favor, which further supports both malicious prosecution claims. (*Id*. at 37).

In *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010), the Sixth Circuit articulated the elements of a § 1983 malicious prosecution claim. A plaintiff must prove: (1) a criminal prosecution was initiated against him and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, he suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal case was resolved in his favor. *Id*. at 308–09. Under Ohio law, "[t]o prevail on a malicious prosecution claim . . . a plaintiff must prove '(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the [criminal] defendant.'" *Radvansky*, 395 F.3d at 316 (quoting *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 735 (Ohio 1990)). Malice exists where there is "willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified[,]" *Cook v. Hubbard Exempted Village Bd. of Educ.*, 116 Ohio App.3d 564, 688 N.E.2d 1058, 1061 (1996), and it "may be inferred from the absence of probable cause." *Garza v. Clarion Hotel, Inc.*, 695 N.E.2d 811, 813 (1997).

As Plaintiff alleges multiple instances of malicious prosecution, given the multiple charges issued during the relevant period, this Court will evaluate each prosecution to which Plaintiff was subjected and determine whether Defendants had sufficient probable cause. As Defendants do not allege Plaintiff fails to satisfy the other requirements of these claims, these findings with respect to probable cause are determinative.

*1.   Traffic Violations – Oct. 7, 2017*

Following Plaintiff's interaction with Defendant Lawless on October 7, 2017, Lawless issued two tickets: Speeding and Failing to Use a Turn Signal. (ECF No. 28 at ¶ 39). Lawless alleges that after yelling threatening words towards him, Plaintiff sped away without using his turn signal. (ECF No. 44-1 at 120–123, 129). Further, Lawless asserts that, as Plaintiff sped away, his radar detected Plaintiff was driving in excess of the speed limit. *Id.* Plaintiff does not dispute that he failed to use his turn signal and concedes he was aware of his speed. (ECF No. 212–213). Plaintiff captured the entire interaction on his dashcam. (*Id.* at 206–210). Defendants retained a forensic video analyst who reconstructed the dashcam video and opined that Plaintiff was traveling in excess of the speed limit. (ECF No. 54 at 14). Defendants argue the forensic video analyst's expert opinion coupled with Lawless's observations are sufficient to establish probable cause. (ECF No. 54 at 13). They maintain neither Betzko nor Mosely was involved in this incident. (*Id.*).

Plaintiff alleges that immediately after he pulled away from Lawless's vehicle, Lawless pulled him over. (ECF No. 60 at 11). Plaintiff disputes that he was traveling in excess of the speed limit. (*Id.*). He also attacks the video used by Defendants' forensic analyst as inadmissible under Federal Rule of Evidence 901(a) and asserts that Defendants will not be able properly to authenticate the video. (*Id.*). Plaintiff further notes that both charges were eventually dismissed. (*Id.* at 12).

This Court is satisfied that there was sufficient probable cause to support the charges of speeding and failing to use a turn signal. As a reminder, the establishment of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 244 n. 13 (1983). Lawless testified that when Plaintiff pulled away, Plaintiff failed to signal, and radar clocked the vehicle traveling eleven (11)

miles over the posted speed limit. (ECF No. 44-1 at 120–123, 129). These observations support a reasonable belief that a traffic violation occurred, and any alleged subjective motivations are immaterial. *Wren v. United States*, 517 U.S. 806, 813 (1996).

### 2. Stalking by Menacing – Oct. 13, 2017

On October 7, 2017, Henry Onions was pulled over for a traffic violation by Lawless. (ECF No. 44-1 at 123). During that traffic stop, Lawless alleges Onions made complaints regarding Plaintiff's conduct, similar to the statements he had already made to the WCHPD. (*Id.* at 82–85). Lawless asked Onions if he wanted to make a statement against Plaintiff, and Onions agreed. (*Id.*). Thereafter, Onions filled out a written statement alleging Plaintiff had been stalking and harassing him. (ECF No. 48-1 at 92–94). Lawless maintains that Onions was afraid Plaintiff would follow him to the Fayette County Sheriff's Office, so Lawless gave him a ride. (*Id.* at 90–91). Once Lawless determined the only way Plaintiff could have known about the October 7 traffic stop was if he was stalking Onions, there was sufficient probable cause to charge Plaintiff with Menacing by Stalking. (ECF No. 44-1 at 144–45). Lastly, Defendants assert that neither Betzko nor Mosely was involved in issuing these charges. (*Id.*).

Plaintiff argues that Lawless interrogated and intimidated Onions during the traffic stop. (ECF No. 60 at 12). Plaintiff alleges it was actually Lawless that requested Onions file stalking and harassment charges against Plaintiff. (*Id.*). These facts find support, says Plaintiff, in Deputy Jon Fausnaugh's testimony wherein he concluded there was no evidence of wrongdoing by Plaintiff, other than Onions's own statements. (*Id.* at 12).

This Court finds there was sufficient probable cause here. Revised Code Section 2903.211(A)(1), prohibits an individual from "engaging in a pattern of conduct . . . [that] shall knowingly cause another person to believe that the offender will cause physical harm to the other

person . . . or cause mental distress to the other person . . . ." Mr. Onions' testimony proves determinative here. He states that on two separate occasions he spoke to Lawless and reported that Plaintiff was harassing him. (ECF No. 48-1 at 32, 55–56). Moreover, he represented that Plaintiff had "done [this] a few times[.]" (*Id*. at 56). Mr. Onions also made similar complaints to the WCHPD and the FCSO. (*Id*.). While these allegations may have not ultimately resulted in convictions, Lawless surely had a "reasonable belief" Plaintiff had engaged in a pattern of conduct prohibited by O.R.C. 2903.211(A)(1). As Defendants argue, an officer "is entitled to rely on an eyewitness identification to establish adequate probable cause[.]" *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).

### 3. *Disrupting Public Meeting & Menacing – Oct. 13, 2017*

During the August 14, 2017, Village Council Meeting, Plaintiff allegedly began yelling explicative language at Councilperson Wood. (ECF No. 44-1 at 158–159). Lawless alleges that after this outburst he had personally to escort Plaintiff out of the meeting. (*Id*.). Thereafter, on September 28, 2018, Councilperson Wood filed a complaint against Plaintiff based on his conduct at the council meeting, stating that "she was in fear for her life." (ECF No. 54 at 12). Lawless maintains that Plaintiff's behavior at the meeting, alongside Councilperson Wood's complaint, gave him sufficient probable cause to charge Plaintiff with Disrupting a Public Meeting and Menacing. (ECF No. 44-1 at 104–106). Defendants further assert that neither Betzko nor Mosely was involved in issuing these charges. (ECF No. 54 at 13).

Plaintiff asserts that, as soon as he was asked to leave the meeting, he complied, as is reflected in Lawless's police report. (ECF No. 60 at 13). Plaintiff highlights several alleged inconsistencies between Lawless's deposition and the incident report, specifically that Lawless testified Plaintiff had to be removed from the meeting but stated in his report that Plaintiff left

when asked. (*Id*.). Plaintiff notes that the menacing charge was eventually dismissed, and the disturbing a lawful meeting charge was pled to a disorderly conduct. (*Id*. at 14). Plaintiff alleges these charges were filed as a direct consequence of Lawless and Betzko's threats, as confirmed by Ms. Clegg, regarding the publishing of the news article. (*Id*.).

When asked about his conduct at the Village Council Meeting, Plaintiff concedes that he shouted expletives at the Councilmembers before being asked to leave by Lawless. (ECF No. 49-1 at 221–22). Plaintiff told Councilperson Shaw that he was "going to get [him]." (*Id*.). A recording of this interaction confirms this sequence of events. (*See* ECF No. 71). Under Ohio Law, "[n]o person, with purpose to prevent or disrupt a lawful meeting . . . shall [m]ake any utterance, gesture or display which outrages the sensibilities of the group." O.R.C. § 2917.12. Similarly, O.R.C. § 2903.22 prohibits "knowingly caus[ing] another to believe that the offender will cause physical harm to the person." Based on his representations and the accompanying recording, this Court is satisfied Lawless had probable cause to charge Plaintiff with Disrupting a Public Meeting, O.R.C. § 2917.12, and Menacing, O.R.C. § 2903.22.

### 4.  *Traffic Violations – Nov. 29, 2017*

Plaintiff alleges that on November 29, 2017, after he was leaving Mayor's Court, Lawless cited him for Reckless Operation, and Peeling Out. (ECF No. 28 at ¶ 69). Plaintiff was found guilty of Reckless Operation and not guilty of Peeling Out by the New Holland Mayor's Court on January 24, 2018. (*Id*., ¶ 70). Plaintiff maintains he appealed the guilty finding on Reckless Operation to the Circleville Municipal Court, but the Mayor's Court allegedly failed to transfer the case to the Circleville Municipal Court. (*Id*., ¶ 71). In his Memorandum in Opposition to Defendants' Motion, however, Plaintiff maintains this charge was ultimately dismissed. (ECF No. 60 at 17). Defendants do not argue probable cause existed for these charges in either their Motion or Reply brief.

Plaintiff has offered evidence that he did not commit either of these offenses. Moreover, Defendants have not even mentioned these charges in their Motion. Given this unrebutted evidence, this Court can only accept Plaintiff's version of events: that Defendants did not have probable cause to charge him with Reckless Operation or Peeling Out.

5.  *Resisting Arrest, Inducing Panic & Disorderly Conduct – Nov. 30, 2017*

Defendants assert that, after Plaintiff was released from the Fayette County Memorial Hospital on November 30, 2017, Officer Mick presented Plaintiff with a valid arrest warrant issued by Magistrate Mellon. (ECF No. 45-1 at 65). Thereafter, Officer Mick testified that Plaintiff resisted arrest for several minutes before being placed into custody and transported to PCSO. (*Id*. at 66). Based on this conduct, Officer Mick stated he had probable cause to charge Plaintiff with Resisting Arrest, Disorderly Conduct and Inducing Panic. (*Id*. at 68). Defendants further cite to several witness statements which confirm Plaintiff screamed and disrupted the operation of the hospital, including that employees were required to close the hospital smoke doors to prevent patients or guests from entering the portion of the hospital where the altercation was occurring. (*Id*. at 60). Defendants again note that neither Betzko nor Mosely was involved in this arrest and these charges. (ECF No. 54 at 20). Defendants further argue Lawless cannot be liable, as he was not the arresting officer.[7] (*Id*.).

Plaintiff does not substantively dispute these facts, asserting only that Officer Mick has since testified that he disagreed with the issuance of the initial warrant, and that each of these charges was dismissed by the Washington Court House Municipal Court. (ECF No. 60 at 18).

Upon review of the relevant provisions of the Ohio Revised Code, as well as the testimony of hospital staff, Officer Mick, and Lawless, the charges were supported by sufficient probable

---

[7] This Court has already rejected this argument, as the evidence show Lawless was substantially involved in the arrest. (*See infra* at Part III(B)(1)).

27

cause. As detailed above, this Court has already found that Plaintiff's arrest was pursuant to a validly issued warrant. (*See infra* at Part III(B)(1)). Importantly, Plaintiff has not attempted to rebut any of Defendants assertions regarding the existence of probable cause.

### 6. Obstruction, Inducing Panic & Resisting Arrest – Oct. 30, 2018

Following the events of October 30, 2018, Plaintiff was arrested and charged with Obstruction, Inducing Panic, and Resisting Arrest. (ECF No. 28 at ¶ 100). Plaintiff spent thirty-five (35) days in jail on these charges. (*Id*.). That evening, Officer Powell approached Plaintiff, Ms. Francis and Brad Mick[8] after a citizen reported they had seen individuals walking around storage units with flashlights and thought someone was breaking into them. (ECF No. 47-1 at 18–22). The three allegedly began yelling at Powell, and Plaintiff began shining a flashlight in Powell's eyes. (*Id*. at 43). Afraid Plaintiff may strike him with the flashlight, Powell reached out to subdue Plaintiff, after which Plaintiff began actively to evade Powell. (*Id*. at 42–46). In addition, during the course of Officer Powell's attempts to secure him, Plaintiff called 9-1-1 and made a claim that Officer Powell was threatening him with a weapon. (*Id*. at 67). Based upon these facts, Defendants assert that the charges of Obstruction, Inducing Panic, and Resisting Arrest were supported by probable cause. (ECF No. 54 at 22). Defendants assert that Lawless and Betzko were not involved in this arrest, and Defendant Mosely was not the arresting officer. (*Id*.).

Plaintiff, meanwhile, asserts that Officer Powell was not permitted to be on Ms. Francis's property, and his presence there undercuts any finding of probable cause. (ECF No. 60 at 22). He maintains that he did not attempt to strike Officer Powell with his flashlight, nor did he refuse to offer his identification. (*Id*.). Plaintiff alleges that while he was initially charged with only

---

[8] At this point, Brad Mick was no longer an officer with NHPD.

Obstructing Official Business, but Officer Powell, after pressure from Defendant Mosely, added the two additional charges of Inducing Panic, and Resisting Arrest. (*Id*. at 23).

This is a closer call. While Officer Powell's representations would seem to support a finding of probable cause, the statements from Plaintiff, Ms. Francis and Mick, rebut each of his claims, one particularly being whether Plaintiff offered identification. As "the existence of probable cause presents a jury question, unless there is only one reasonable determination possible," and there is no such singular determination possible here, this question must go to a jury. And, as Defendant Mosely was at least somewhat involved in Plaintiff's prosecution, he cannot escape liability here. The remaining Defendants, however, were not involved in this arrest and prosecution, and therefore cannot be liable.

\* \* \*

Given the foregoing determinations on the existence of probable cause, Defendants are **GRANTED** summary judgement on Plaintiff's federal and state malicious prosecutions claims stemming from the following charges: Traffic Violations (Oct. 7, 2017); Stalking by Menacing (Oct. 13, 2017); Disrupting a Public Meeting & Menacing (Oct. 13, 2017); and Resisting Arrest, Inducing Panic & Disorderly Conduct (Nov. 29, 2017).

Meanwhile, considering the previous findings on the lack of probable cause, and the malice that may be inferred from there, Defendants are **DENIED** summary judgement on Plaintiff's federal and state malicious prosecutions claims stemming from the following charges, against the following individuals: Traffic Violations against Lawless (Nov. 29, 2017); and Obstruction, Inducing Panic & Resisting Arrest against Mosely (Oct. 30, 2018). Defendant Betzko, meanwhile, is **GRANTED** summary judgment on this claim, given his lack of involvement.

### F. Federal & State Law Civil Conspiracy

Defendants argue Plaintiff's federal and state law civil conspiracy claims are barred under the intra-corporate conspiracy doctrine. (ECF No. 54 at 24). Pursuant to this doctrine, because all the Defendants are members of the same collective agency, none of them can be held as two separate people to form a conspiracy. (*Id.* at 25 (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 817 (6th Cir. 2019))). This doctrine, say Defendants, is equally applicable to both federal and state law civil conspiracy claims. (*Id.* at 32 (citing *Bays v. Canty*, 30 Fed. Appx. 594, 594 (6th Cir. 2009))). Defendants argue Plaintiff has still offered no evidence of a single plan, which is required to establish a claim of civil conspiracy under either federal or state law. (*Id.*).

Plaintiff acknowledges that the intra-corporate conspiracy doctrine bars his federal civil conspiracy claim and agrees to withdraw this claim. (ECF No. 60 at 33). As to his state law civil conspiracy claim, however, Plaintiff argues he has alleged and produced evidence to create a genuine issue of material fact that Defendants Lawless and Betzko conspired to have him arrested on several occasions. (*Id.* at 38). Plaintiff relies on the audio record from Ms. Clegg. (*Id.*). Plaintiff argues he has produced sufficient evidence and facts to support his state claim for civil conspiracy between Defendants Betzko and Mosley. (*Id.*).

As Plaintiff has waived his federal civil conspiracy claim (ECF No. 60 at 33), all that remains for this Court to evaluate is his state law claim for civil conspiracy. The Sixth Circuit has held that the intra-corporate conspiracy doctrine is applicable in civil rights suits, such that a conspiracy cannot be maintained where two or more employees of the same entity are acting within the scope of their employment when they allegedly conspired. *See Jackson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). This includes civil conspiracy claims under both 28 U.S.C. § 1985 and § 1983. *Id.*, at 820. The intra-corporate conspiracy doctrine has also been applied to civil

conspiracy claims under Ohio law. *Bays*, 330 F. App'x at 594 (holding a district court that relied on the intra-corporate conspiracy doctrine to dismiss a civil conspiracy claim under Ohio law, did not err).

Each of the Defendants is part of the same entity: the Village. They cannot, therefore, be engaged in a conspiracy where they were acting within the scope of their employment when they allegedly conspired. Given that Plaintiff does not claim Defendants *were not* acting in the scope of their duties, the intra-corporate conspiracy doctrine applies, and Defendants are **GRANTED** summary judgment on this claim.

### G.  State Law Abuse of Process

Defendants allege Plaintiff has failed to create a genuine issue of material fact as to whether there was any improper activity after the initiation of a valid criminal process. (ECF No. 54 at 33). Defendants assert Plaintiff offers no evidence establishing that the criminal complaints against him were filed with ulterior motive nor that the legal proceeding was perverted to accomplish such ulterior motive. (*Id*.). Rather, say Defendants, each of the legal proceedings initiated against Plaintiff were supported by probable cause. (*Id*.).

Plaintiff claims there is sufficient evidence in the record showing that each of the legal proceedings initiated against him, probable cause or not, was perverted to accomplish an ulterior motive for which it was not designed. (ECF No. 60 at 39). Plaintiff points to the recorded phone conversation from Ms. Clegg, and the alleged threats therein. (*Id*.). He asserts that Defendants were not interested in any ultimate decision of the prosecutors or the Courts as to the alleged crimes; they just wanted revenge against him, and the charges were enough. (*Id*.). By doing this, says Plaintiff, Defendants subverted a process properly initiated, for improper purposes. (*Id*.). Plaintiff further highlights that almost all charges issued were dismissed. (*Id*. at 39–40).

The Ohio tort of abuse of process has three elements: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co.*, 68 Ohio St.3d 294, 626 N.E.2d 115, 118 (Ohio 1994). There is no liability for abuse of process "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Id*. at 118 n. 2 (quoting Prosser & Keeton, The Law of Torts § 121, at 898 (5th ed.1984)). As the Ohio Supreme Court has explained:

> In an abuse of process case, "[t]he improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order.

*Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 662 N.E.2d 9, 14 (Ohio 1996) (quoting Prosser & Keeton, The Law of Torts § 121, at 898 (5th ed.1984)); *see also Wolfe v. Little, C.A.*, No. 18718, 2001 Ohio App. LEXIS 1902, at *7, 2001 WL 427408 (Ohio Ct. App. Apr. 27, 2001) ("In order to show the process was perverted to accomplish an ulterior purpose, the Appellants must show both an act committed during the process that was not proper in the normal conduct of the proceeding and the Appellees' ulterior motive.").

Defendants argue Plaintiff's abuse of process claim should be dismissed because he has not identified an ulterior purpose behind any prosecution to which he was subject. The Court agrees. As detailed numerous times throughout this Opinion and Order, Plaintiff has offered little to no evidence, which would create a genuine issue of material fact, that Defendants had any ulterior motive or retaliatory animus in initiating these proceedings. The recorded phone conversation from Ms. Clegg is not helpful, neither are the harassing phone calls made by Ms.

Landham. Neither of these individuals is named in the Amended Complaint, and one of them is not employed by the Village. There is also no evidence that Ms. Landham made these calls from the Village office. (ECF No. 45-1 at 114 (Officer Mick testifying that Ms. Landham never told him she called Plaintiff from the Village office or that Lawless told her what to say to Plaintiff); ECF No. 44-1 at 250 (Lawless testifying that he pulled phone records from his office phone which showed no calls were made on the day Ms. Landham was there).

As an aside, this Court is not convinced Plaintiff's abuse of process claims are proper. It seems rather, this claim is a duplicate claim for malicious prosecution. "When process is used legitimately or justifiably and that process is later put to an improper use, an element of a claim for abuse of process has been established. If[,] [however,] process is issued illegitimately or unjustifiably but is properly used within the limits of that initial writ, an element of a claim for malicious prosecution is established but not an element of a claim for abuse of process[.]" *Donohoe v. Burd*, 722 F. Supp. 1507, 1518 (S.D. Ohio 1989), *aff'd*, 923 F.2d 854 (6th Cir. 1991). Plaintiff's claim here is not that these charges were justifiably issued and then that lawful process was subverted. Rather, he alleges Defendants trumped up fraudulent charges, with no hope of success, simply to harass and discredit Plaintiff. (*See* ECF No. 60 at 39–40).

As detailed above, this Court finds merit in some of Plaintiff's malicious prosecutions claims. His abuse of process claims, however, are both unsubstantiated and misplaced. Accordingly, Defendants are **GRANTED** summary judgment on this claim.

### H. Intentional and Negligent Infliction of Emotion Distress

Defendants allege there is no evidence they engaged in the type of "extreme or outrageous" conduct necessary to establish an intentional infliction of emotional distress ("IIED") claim, nor has the Plaintiff established he has experienced the type of devastating emotional injury necessary

to support this claim. (ECF No. 54 at 34). Defendants claim the evidence establishes only that Plaintiff engaged in a course of misconduct that prompted the filing of charges. (*Id*.). Similarly, Defendants argue they are entitled to summary judgment on Plaintiff's negligent infliction of emotional distress ("NIED") claim, as there is no evidence that Plaintiff witnessed or experienced a dangerous accident, nor was he subjected to physical peril. (*Id*. at 34–35).

Plaintiff maintains that Defendants conduct was sufficiently "intentional or reckless" to support his IIED claim. (ECF No. 60 at 40). He claims the harassment which led to the thirteen (13) charges, was surely intentional, if not reckless. (*Id*.). He asserts that the uneven power dynamic between him and Defendants would cause "any improper conduct" to result in "traumatic injury" and that the alleged intimidation was diametrically opposed to Defendants' duty to protect citizens and offends standards of decency and morality. (*Id*. at 40–41). Regarding the severity of his injury, Plaintiff offers Dr. Staurt Bassman's expert report, wherein Dr. Bassman found Plaintiff suffers from post-traumatic stress disorder ("PTSD") that was "proximately caused" by encounters with Defendants. (*Id*. at 42). Plaintiff does not argue an NIED claim in his response brief.

To succeed on his IIED claim, Plaintiff must show that Defendants intentionally or recklessly caused him serious emotional distress by extreme and outrageous conduct. *McNeil v. Case W. Reserve Univ.*, 664 N.E.2d 973, 975 (Ohio 1995) (citing *Yeager v. Local Union 20*, 453 N.E. 2d 666 (1983) *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007))). The behavior complained of must go beyond the intentionally tortious or even the criminal. *Yeager*, 453 N.E .2d at 671. Rather, the conduct must be so extreme and outrageous as "'to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id*. at 671 (quoting Rest. 2d of Torts § 46, cmt. d (1965)). Furthermore, the emotional distress must be serious. *Id*. To defeat a motion for summary judgment on an IIED claim, a plaintiff must present evidence

sufficient to create a genuine issue of material fact as to the defendant's behavior and the severity of the injury suffered. *McNeil*, 664 N.E.2d at 975–76; *Uebelacker v. Cincom Systems, Inc.*, 549 N.E.2d 1210, 1220 (Ohio Ct.App.1988) (finding that the plaintiff raised a genuine issue of material fact as to his emotional distress when he submitted an affidavit from his wife detailing the various symptoms of his distress).

What Plaintiff has alleged here—the arrest and prosecution of one individual for roughly thirteen (13) different offenses over the course of a year—is not a mere insult or petty oppression. If taken as true, that conduct is beyond the bounds of decency. *See e.g. Morningstar v. Circleville Fire & EMS Dep't*, No. 2:15-CV-3077, 2018 WL 1365842 (S.D. Ohio Mar. 16, 2018) (holding that whether repeated harassment and "pranking" of a female firefighter was beyond the bounds of decency was a factual intensive inquiry best left to a jury). Plaintiff has also provided sufficient evidence, for the purpose of summary judgment, to create a genuine issue of material fact as to the severity of his emotional distress. Dr. Bassman opined that Plaintiff now suffers from PTSD because of Defendants' actions, which will require long-term, intensive psychological treatment, psychiatric care, and psychotherapy. (ECF No. 61-8 at 6–8). Courts have previously found this sort of distress sufficient to survive summary judgment on an IIED claim. *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983) (defining "serious" in the context of an IIED claim as including "traumatically induced neurosis, psychosis, chronic depression, or phobia"); *see e.g., Robinson v. Franklin Cty. Bd. of Comm'rs*, No. 99-CV-162, 2002 WL 193576 (S.D. Ohio Jan. 28, 2002) (finding plaintiff's IIED claim could survive summary judgment where he offered evidence that he had missed long periods work because of stress-related illnesses); *but see Katterhenrich v. Fed. Hocking Local Sch. Dist. Of Educ.*, 121 Ohio App.3d 579, 700 N.E.2d 626, 633–34 (1997)

(granting defendants summary judgment on plaintiff's IIED claim where plaintiff had not received treatment from a psychiatrist or physiologist).

Ultimately, this Court finds that whether Defendants' conduct constitutes intentional infliction of emotional distress presents a factual intensive inquiry best left to the jury. Plaintiff has set forth sufficient evidence, to survive summary judgment, that Defendants Lawless and Mosely intentionally or recklessly caused him serious emotional distress by repeatedly arresting and prosecuting him for thirteen (13) different offenses over the course of roughly a year. Moreover, a grant of statutory immunity would be premature as a genuine issue of material fact exists as to whether Lawless and Mosely acted wantonly or recklessly. *Fabrey*, 639 N.E.2d at 35.

Accordingly, Defendant Lawless and Mosely are **DENIED** summary judgment on this claim. As Plaintiff has not shown that Defendant Betzko played any role in any of his arrests or prosecutions, however, he is **GRANTED** summary judgment on this claim. Also, as Plaintiff has not addressed his NIED claim, this Court deems it abandoned. *See Brown*, 545 Fed. Appx. at 368.

### I. Civil Theft

Defendants maintain Plaintiff has failed to produce evidence to create a genuine issue of material fact as to his claim for civil theft. (ECF No. 54 at 35). They argue that there is no evidence of record showing any Defendant played a role in any alleged theft of his property. (*Id.*). Defendants assert that the statement from Ms. Clegg, that she was going to make sure Plaintiff lost his phone and laptop, cannot serve as evidence that anyone within the Village took steps to take Plaintiff's property. (ECF No. 70 at 5-6). Further, Defendants claim they only came to be in possession of Plaintiff's flash drive after Ms. Camp, whose house Plaintiff allegedly left the drive at, reached out to NHPD and it was placed in evidence. (*Id.* at 6).

Plaintiff claims Ms. Clegg's statements, coupled with the fact that his flash drive was recovered by NHDP and placed in evidence, constitutes sufficient evidence that could lead a reasonable jury to find Defendants stole this property. (ECF No. 60 at 43). Plaintiff further emphasizes Lawless and the Village's failure to inform Plaintiff they were in possession of the flash drive, and refusal to return it to him, as further evidence of civil theft. (*Id.*).

Ohio's civil theft statute, O.R.C. § 2307.61, allows a property owner who brings a civil action pursuant to O.R.C. § 2307.60(A), to recover damages from "any person who willfully damages the owner's property or commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property . . . ." *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 400 (2016). Upon review of the record, this Court finds no genuine issue of material fact as to whether Defendants stole Plaintiff's property. As detailed several times above, the statements of Ms. Clegg cannot be attributed to any other Defendant. It would seem Lawless took Ms. Clegg's statement seriously, as he filed an incident report. (ECF No. 44-1 at 173–175). This act does not support Plaintiff's contention that Lawless, or any Defendant, stole Plaintiff's belongings. Plaintiff's self-serving deposition testimony alone, is not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013).

Even were these allegations sufficient, Plaintiff's Amended Complaint does not specify which "theft offense," as defined in § 2913.01, Defendants allegedly committed. (*See* ECF No. 28 at ¶¶ 186–188). As the statute details a wide variety of "theft offenses," from Medicare fraud to armed robbery, Plaintiff cursory citation to the statute as a whole, is unconvincing. O.R.C. § 2913.01.  Accordingly, Defendants are **GRANTED** summary judgment on this claim.

### IV.  CONCLUSION

For the following reasons, Defendants' Motion (ECF No. 54) is **GRANTED in part and DENIED in part**. Plaintiff's federal and state malicious prosecutions claims stemming from the following charges, against the following individuals, may proceed: Traffic Violations against Defendant Lawless (Nov. 29, 2017); and Obstruction, Inducing Panic & Resisting Arrest (Oct. 30, 2018) against Defendant Mosely. Furthermore, Plaintiff's IIIED claim against Defendants Lawless, and Mosely may also proceed. Lastly, as Defendants did not seek summary judgment on Plaintiff's state law defamation claim, that claim too may remain. As there are no remaining claims asserted against them, however, Defendant Betzko and the Village are **DISMISSED**.

This Opinion and Order **SUPERSEDES** this Court's previously issued Interim Order (ECF No. 77), and any incongruencies are hereby resolved in favor of the former.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: April 25, 2022**